# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CALVIN DEWAYNE HIGDON, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF GENEVA, INDIANA, GENEVA POLICE DEPARTMENT, AND GENEVA POLICE OFFICER RONALD R. RASAWEHR, <br><br> Defendants. | CAUSE NO.: 1:15-CV-115-TLS |

## OPINION AND ORDER

The Plaintiff, Calvin Dewayne Higdon, sued the City of Geneva, Indiana, the Geneva Police Department, and Geneva Police Officer Ronald R. Rasawehr for events that occurred at his home on June 6, 2014.

The Defendants have filed a Motion for Summary Judgment [ECF No. 31], asserting that they are entitled to judgment as a matter of law because the undisputed evidence establishes that the individual officer has qualified immunity from the Plaintiff's claims that he violated the Plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment rights, that the Town of Geneva (including the Geneva Police Department) cannot be liable as a matter of law pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), and that no civil cause of action exists under 18 U.S.C. § 242. In the Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment [ECF No. 34], the Plaintiff acknowledges the merits of the Defendants' arguments in favor of summary judgment related to his claims under the Eighth and Fourteenth Amendment and pursuant to 18 U.S.C. § 242. He further acknowledges that there is no evidence that his injury was the result of an official policy or custom, as required for municipal liability.

Accordingly, the only claims that remain in dispute are those against the individual officer for violations of his constitutional rights under the Fourth and Fifth Amendments.[1] *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (holding that the plaintiffs had waived claims where they did not respond to defendant's arguments and "did not provide the district court with any basis to decide" them).

**MOTION TO STRIKE**

In connection with the pending Motion for Summary Judgment, the Defendant has moved to strike [ECF No. 36] statements that are contained in the Affidavit of Dewayne Higdon, and written statements that the Plaintiff attributes to a third party, Margaret LaPeer. The Defendant argues that the statements do not comply with Federal Rule of Civil Procedure 56(c)(4), as they contain inadmissible hearsay and irrelevant information, and they lack foundation. Because the Court can distinguish which statements may properly be considered when deciding whether summary judgment is appropriate, the Court will not rule on the Motion to Strike [ECF No. 36] as a separate motion. The Court has noted the Defendant's objections and will consider the objections to the extent they arise in the Court's summary judgment analysis.

**FACTUAL BACKGROUND**

On June 6, 2014, at around 10:00 p.m., Deputy Marshal Ronald Rasawehr (Officer Rasawehr) of the Town of Geneva Police Department responded to an unwanted party call at a residence located in Geneva. When Officer Rasawehr arrived, the Plaintiff, Dewayne Higdon, requested that Officer Rasawehr remove Margaret LaPeer from his residence. The Plaintiff

---

[1] Because only Defendant Rasawehr is implicated in the remainder of the Court's Opinion and Order, the Court will refer to a singular Defendant going forward.

advised that he wanted to put her items outside, and was concerned that LaPeer was attempting to take property that belonged to the Plaintiff. Officer Rasawehr entered the home to locate LaPeer. As she packed items from the bedroom, Officer Rasawehr directed the Plaintiff to stay outside the bedroom. The Plaintiff continued to claim that LaPeer was taking items that belonged to him. Officer Rasawehr ignored the Plaintiff's request that the Plaintiff be allowed to pack LaPeer's belongings.

When LaPeer had gathered nearly all of her items from the house, she asked to talk to Officer Rasawehr privately. LaPeer and Officer Rasawehr went outside, and the Plaintiff shut the door, believing that LaPeer had all her personal property packed up and that Officer Rasawehr's assistance in removing LaPeer was complete. LaPeer then told Officer Rasawehr that the Plaintiff had marijuana inside one of his pill bottles that was located next to his computer screen, along with other paraphernalia that he used to smoke it. Officer Rasawehr clarified with LaPeer that if he walked by the computer right then, that is where the marijuana would be located. Officer Rasawehr followed LaPeer back inside the residence. While she gathered more belongings from the bedroom, Officer Rasawehr went to the kitchen where the computer was located. According to the Plaintiff, he used a flashlight to look around the dark kitchen, including behind the Plaintiff's computer and the freezer. Officer Rasawehr discovered a pill bottle that contained marijuana, as well as other paraphernalia.

Officer Rasawehr arrested the Plaintiff for possession of paraphernalia and brought him to jail, where he was detained for about an hour before he posted bond. On June 9, 2014, the Plaintiff was charged with Possession of Marijuana and Possession of Paraphernalia stemming from his June 6, 2014, arrest and Officer Rasawehr's probable cause affidavit. The case was dismissed on May 4, 2015.

ANALYSIS

This Court will only grant summary judgment if all the admissible submissions indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(a).

When public officers violate the constitutional rights of citizens, 42 U.S.C. § 1983 provides the vehicle for a legal claim. Officer Rasawehr has asserted that he is entitled to qualified immunity, which is a doctrine that protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Qualified immunity is intended to strike a balance between "protect[ing] a government official's ability to function without the threat of distraction and liability" and "afford[ing] members of the public the ability to vindicate constitutional violations by government officials who abuse their offices." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (internal quotation marks and citations omitted).

Because the Defendant has raised qualified immunity as a defense to the Plaintiff's constitutional claims, it is the Plaintiff's burden to defeat it. *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017); *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). The Plaintiff satisfies this burden if he shows (1) that the facts, taken in the light most favorable to the Plaintiff, make out a violation of a constitutional right, and (2) that constitutional right was clearly established at the time of the alleged violation, such that it would have been clear to a reasonable actor that his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Williams v. City of Chi.*, 733 F.3d 749, 758 (7th Cir. 2013) (citation omitted). "If *either* inquiry is answered in the

negative, the defendant official is entitled to summary judgment." *Gibbs*, 755 F.3d at 537. The Court is not required to address the prongs in order. *Pearson*, 555 U.S. at 236.

### A. Fourth Amendment—Search

Officer Rasawehr first argues that he did not conduct a "search" because he observed items of contraband in "plain view." This assertion is inconsequential if, as the Plaintiff claims, Officer Rasawehr had no lawful grounds to be in the Plaintiff's kitchen. "[A]n essential predicate to any valid warrantless seizure of incriminating evidence [is] that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton v. California*, 496 U.S. 128, 136 (1990); *see also United States v. Curlin*, 638 F.3d 562, 566 (7th Cir. 2011). The Court does not understand the Plaintiff to be challenging the "seizure" of the marijuana as a violation of his Fourth Amendment rights, but to be challenging Officer Rasawehr's presence in his kitchen—to look for anything.

It is undisputed that Officer Rasawehr did not have a warrant to search the Plaintiff's kitchen. This case turns on whether LaPeer consented to the search possessing actual authority to consent to a search, or consented under circumstances where it was reasonable for Officer Rasawehr to believe that she possessed such authority. "A warrantless search does not violate the Fourth Amendment if a person possessing, or reasonably believed to possess, authority over the premises voluntarily consents to the search." *United States v. Groves*, 530 F.3d 506, 509 (7th Cir. 2008) (citing *Georgia v. Randolph*, 547 U.S. 103, 106 (2006)). If a person permits a third party to exercise actual or apparent authority over his property, he is deemed to have "assumed the risk that the third party might permit access to others, including government agents." *United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000) (first citing *United States v. Matlock*, 415

U.S. 164, 171 n.7 (1974); then citing *United States v. Jensen*, 169 F.3d 1044, 1049 (7th Cir. 1999)). "The key to consent is actual or apparent authority over the area to be searched." *Id.* (citing *United States v. Aghedo*, 159 F.3d 308, 310 (7th Cir. 1998)).[2]

Some factors that have been found in the caselaw to support a finding of actual or apparent authority have included: (1) possession of a key to the premises; (2) the person's admission that she lives at the residence in question; (3) possession of a driver's license listing the residence as the driver's legal address; (4) receiving mail and bills at that residence; (5) keeping clothing at the residence; (6) having one's children reside at that address; (7) keeping personal belongings such as a diary or a pet at the residence; (8) performing household chores at the home; (9) being named on the lease and/or paying rent; and (10) being allowed into the home when the owner is not present. *United States v. Groves*, 470 F.3d 311, 319 (7th Cir. 2006) (emphasizing that the list is not an exhaustive checklist and suggesting that no factor alone is determinative one way or another); *see also United States v. Saadeh*, 61 F.3d 510, 517 (7th Cir. 1995) ("To assess whether apparent authority exists, we look for indicia of actual authority.") (first citing *United States v. Rosario*, 962 F.2d 733, 737 (7th Cir. 1992); then citing *United States v. Miller*, 800 F.2d 129, 134 (7th Cir. 1986)).

### 1. *Actual Authority to Consent*

If LaPeer possessed actual authority to consent to a search of the Plaintiff's home, the Court will not need to address the second prong of the qualified immunity analysis or apparent

---

[2] The Supreme Court has recognized a narrow exception to the rule that consent by one resident of jointly occupied premises is generally sufficient to justify a warrantless search. *See Fernandez v. California*, 571 U.S. 292, 300 (2014) (holding that refusal of consent by physically present inhabitant is dispositive as to him, regardless of the consent of a fellow occupant). Although the Plaintiff claims that he had closed the door prior to Officer Rasawehr re-entering, he does not allege that he was at the door and specifically refused consent. Therefore, this exception is not implicated.

authority. In that situation, LaPeer's actual authority would justify the search and moot the issue of whether Officer Rasawehr acted reasonably in assuming that she had authority.

Actual authority does not depend on property law distinctions but on whether there is "'mutual use of the property by persons generally having joint access or control for most purposes.'" *United States v. Ryerson*, 545 F.3d 483, 487 (7th Cir. 2008) (quoting *Matlock*, 415 U.S. at 171 n.7). The case law is replete with examples where a girlfriend's consent to search a shared residence has been held to qualify as valid consent under the Fourth Amendment. Such holdings are not surprising as these live-in girlfriends had mutual use of the property, and joint access or control of the property for most purposes. Arguably, in this case, the Plaintiff has presented facts that run counter to this conclusion. The Plaintiff maintains that LaPeer's name was not on the lease, she did not have a key to the house, she did not pay rent, she was not allowed to be in the home when he was not present, she received no mail at the house, and she did not purchase groceries to share with the Plaintiff. While the Defendant disputes some of these assertions, such as whether the Plaintiff had a key, received mail at the house, or bought groceries that the Plaintiff consumed, the facts must be considered in a light most favorable to the Plaintiff. It is particularly significant that LaPeer was not permitted to be inside the house unless the Plaintiff was present. The Defendant's version creates a triable issue of fact regarding LaPeer's authority, but it does not entitle him to qualified immunity.

What is more, at the point in time when LaPeer offered her consent, the Plaintiff was intent on ending any access she previously had to the residence. *Cf. Ryerson*, 545 F.3d at 487 (finding actual authority where, although the defendant's girlfriend had left the home at the time of the search, the defendant did "not claim that he kicked her out of the house; rather, she

7

appears to have left on her own accord after a tiff with him"). Thus, LaPeer's mutual use of the property, and any joint access or control, were already revoked.

### 2. *Apparent Authority to Consent/Clearly Established Constitutional Right*

It is incontestable, as the Plaintiff argues, that no reasonable officer could claim to be unaware of the general rule well established by the Supreme Court that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional. *See Payton v. New York*, 445 U.S. 573, 586–88 (1980). But the statement is too general to be helpful, as "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). The "general proposition" that "an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742.

Apparent authority and qualified immunity are concepts that similarly focus on whether an officer acted reasonably in light of the legal standards in place at the time of the alleged violation. *See Illinois v. Rodriguez*, 497 U.S. 177, 185–89 (1990) (finding that apparent authority exists where officers reasonably, although erroneously, believe that the person who consents to their entry has the actual authority to do so). Violation of a constitutional right may be clearly established either because "the violation is so obvious that a reasonable state actor would know that what they are doing violates the Constitution, or if a closely analogous case establishes that the conduct is unconstitutional." *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001). Accordingly, unless the facts involve an obvious case where the unlawfulness would have been "apparent," the Court must identify a case "where an officer acting under similar circumstances

as Officer [Rasawehr] was held to have violated the Fourth Amendment." *White*, 137 S. Ct. at 552. Qualified immunity is a fact-intensive analysis. *See Ienco v. City of Chi.*, 286 F.3d 994, 1001 (7th Cir. 2002).

The Plaintiff, in his briefing, attempts to put this case in the realm of those that are so obvious that a reasonable state actor would know that what he is doing violates the Constitution. He does so by refuting that LaPeer gave Officer Rasawehr consent to search the kitchen. He notes that nowhere in the probable cause affidavit did Officer Rasawehr state that LaPeer "gave him consent or permission to search anywhere, let alone somewhere other than the bedroom where her belongings were." (Pl.'s Br. in Opp'n 15 (arguing that the Defendant's facts do not establish that LaPeer "gave her actual or implied consent to search the home and especially nowhere other than in the bedroom where she was getting her tangible personal property").)

The Plaintiff's argument—that LaPeer never provided consent—relies on an incomplete representation of the facts. The Plaintiff cannot dispute that LaPeer, outside of his sight and hearing, initiated a conversation where she told Officer Rasawehr that marijuana was located in a container next to the computer screen in the kitchen. When Officer Rasawehr asked if he would find marijuana if he walked by the computer right then, LaPeer confirmed that he would. These statements describe a location outside the bedroom, and identify what LaPeer expected—and wanted—Officer Rasawehr to find. Then, when LaPeer and Officer Rasawehr proceeded back inside the house together, Officer Rasawehr went straight to the kitchen. Far less has been held to constitute consent. *See, e.g.*, *United States v. Sabo*, 724 F.3d 891, 894 (7th Cir. 2013) (consent found where arrestee opened door, stepped back and to the side, allowing police into his trailer); *Harney v. City of Chi.*, 702 F.3d 916, 925–26 (7th Cir. 2012) (consent found where officer followed one of two arrestees into condominium unit and neither arrestee objected to officer's

9

presence in their home); *United States v. Walls*, 225 F.3d 858, 862–63 (7th Cir. 2000) (consent found where arrestee opened door to officers, stepped back to allow officers' entrance into home, motioned for officers to follow her into kitchen); *United States v. Cotnam*, 88 F.3d 487, 495 (7th Cir. 1996) (consent found where arrestee gestured to officers to open door with key and did not object to their presence in his hotel room).

Thus, there can be no dispute that LaPeer consented to a search of the kitchen. The question that remains for purposes of qualified immunity is whether an officer in Officer Rasawehr's position would be reasonable, even if erroneous, in believing that LaPeer had the requisite authority to consent to the search. Apparent authority exists when, prior to commencement of the search, the facts are such that a "person of reasonable caution" would "believe that the consenting person had authority over the premises." *Ryerson*, 545 F.3d at 489. This does not mean that the police may assume authority whenever they are invited inside. "Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." *Rodriguez*, 497 U.S. at 188; *see also United States v. Alexander*, 573 F.3d 465, 474 (7th Cir. 2009) (noting that an officer has a duty to inquire further as to a third party's authority to consent to a search if the surrounding circumstances make that person's authority questionable). Facts that come to light after the search began cannot reasonably have influenced an officer's beliefs regarding apparent authority. *Alexander*, 573 F.3d at 474; *Groves*, 470 F.3d at 319.

Before LaPeer offered her consent for Officer Rasawehr to look for contraband in the kitchen, Officer Rasawehr had been inside the bedroom where LaPeer was currently keeping her belongings. Although he had inquired about a driver's license, she did not have one. The only

other inquiry Officer Rasawehr made was to ask LaPeer how long she had lived at the residence. Her answer indicated that she had been living there for six months. A person of reasonable caution would believe that LaPeer had joint access to the kitchen, as well as the rest of the house, during these six months as well as on the day in question. If this were the totality of facts, Officer Rasawehr would have been reasonable in believing that LaPeer could consent to the search. But Officer Rasawehr was also aware of the Plaintiff's express desire that LaPeer vacate the premises and take her belongings with her. It is the very reason Officer Rasawehr was present that evening at the Plaintiff's house. And there are no facts in the record that would cause a reasonable person to believe that the Plaintiff did not intend for LaPeer to stay away, or that he would allow her to continue to have any right of access to the house.

The Sixth Circuit, addressing the situation where a live-in girlfriend had been kicked out of the residence she shared with her boyfriend, has observed:

> We recognize that in the abstract, if an occupant with formal authority over the premises takes affirmative and unambiguous action to break relations with a live-in lover and to exclude the latter from the formerly shared dwelling, it may not be reasonable to believe that the latter retains common authority to consent to a search. However, the reasonableness of police officers' beliefs is evaluated in light of all particular facts known to the officers, not by abstracting from the particulars.

*United States v. Penney*, 576 F.3d 297, 309 (6th Cir. 2009). The court then concluded that, in the case before it, the particular facts known to the officers from their past experience was that the couple frequently quarreled and reconciled. *Id.* The officers had no reason to think the situation was different on the particular day in question. *Id.* ("Lovers' quarrels and reconciliations are as much of a 'reality in today's world' as is cohabitation without 'legal formalities,' and the police cannot be faulted for not presuming that a particular quarrel put an end to the couple's relationship and living arrangements.").

11

Here, Officer Rasawehr had no such past experience to rely upon, at least none that has been presented on the current record before the Court. Officer Rasawehr does not identify any facts from which he could reasonably believe that LaPeer was still a legitimate resident of the Plaintiff's home after the Plaintiff's affirmative and unambiguous action to break relations with her and exclude her from the residence. He had first-hand knowledge of the circumstances under which the consenting party has just been displaced from the residence, along with her personal belongings, and would not continue to have any lawful access to the home. Officer Rasawehr was on notice that the Plaintiff was concerned that LaPeer would steal from him, and that he was taking measures to ensure that she had no access to his property. Although it would have been reasonable for an officer to believe that, during the prior six months, the Plaintiff "assumed the risk that [LaPeer] might permit access to others, including government agents," the Plaintiff's actions on the evening of June 6, 2014, would have communicated to a reasonable officer that he was eliminating the risk that LaPeer herself would have such access, much less retain common authority to provide it to others.

Construing the facts of this case in a light most favorable to the Plaintiff, the Court finds that this case does not require abstracting from the particulars to determine that conducting a warrantless search based only on this consent would have been an obvious violation of the Fourth Amendment. Where the controlling tenant revokes a third-party consenter's mutual use of the property, in the presence of the officer, and no other legal grounds exist to support a continued right of access, that officer cannot reasonably rely on the third-party's consent to gain lawful access to conduct a warrantless search. Accordingly, Officer Rasawehr is not entitled to qualified immunity.

B.     Fourth Amendment—Seizure

The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013) (citing *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006)). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* Although a jury usually determines whether the arrest was supported by probable cause in a § 1983 claim, a court can make that decision on summary judgment if the underlying facts are undisputed. *Id.* A law enforcement officer will be immune to claims based on an arrest without probable cause unless "it is obvious that no reasonably competent officer" would have believed that there was probable cause to arrest. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Plaintiff does not dispute that possession of marijuana is a crime under Indiana law. Rather, he maintains that there was no probable cause for his arrest because, "at least twice [Officer Rasawehr] was informed that the marijuana for which he arrested the Plaintiff was not the Plaintiff's." (Pl.'s Br. in Opp'n 21.) Probable cause to arrest "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975); *see also Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057 (7th Cir. 2011) (probable cause "does not require the existence of criminal activity to be more likely true than not true"). "Probable cause does not require certainty. It is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015) (internal quotation marks and citation omitted). "[A] court looks at the conclusions that the arresting officer

reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Holmes v. Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007).

The Court assumes, for purposes of summary judgment, that after Officer Rasawehr found the marijuana LaPeer told him it actually belonged to her. Even with this statement, there was probable cause to believe that the marijuana belonged to the Plaintiff. It was located next to the Plaintiff's computer in a pill bottle with the Plaintiff's name on it, along with numerous other prescription medications. Nothing suggested that any of the items near the computer belonged to anyone other than the Plaintiff. LaPeer's statement would have been nothing more than a contradiction of her earlier statement that the marijuana and paraphernalia belonged to the Plaintiff. Given the totality of circumstances, that was not a dispute Officer Rasawehr was required to resolve before he could find probable cause. Thus, Officer Rasawehr is entitled to qualified immunity with respect to the Plaintiff's § 1983 claim for false arrest.

### C. Fifth Amendment

The Plaintiff complains that he was not "read his Fifth Amendment rights or given a Miranda warning informing him of his right against self-incrimination and to hire an attorney." (Pl.'s Br. in Opp'n 22, ECF No. 22.) He asserts that this is problematic because Officer Rasawehr's affidavit for probable cause contains the assertion that the Plaintiff admitted to Officer Rasawehr that he was a war veteran and smoked marijuana to deal with his pain. The Plaintiff asserts that he did not make any such admission with respect to marijuana.

According to the Plaintiff, he never made any incriminating statements. Thus, he was not "compelled in [a] criminal case to be a witness against himself." U.S. Const. amend. V; *see also Johnson v. Garza*, 564 F. Supp. 2d 845, 853 (N.D. Ill. 2008) (dismissing Fifth Amendment claim

where pleading did not allege that the plaintiff made an incriminating statement, only that police officer *claimed* that he made such statements). Because the Plaintiff has not presented the Court with evidence on which a reasonable jury could rely to find in his favor, *see Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010), the Defendant is immune from suit and is entitled to judgment as a matter of law on the Fifth Amendment claim.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the Motion for Summary Judgment [ECF No. 31], which included the arguments set forth in the Defendants' Motion to Strike [ECF No. 36]. Both Motions are termed as pending motions. By separate order, the Court will schedule a trial on the remaining Fourth Amendment claim against Officer Rasawehr.

SO ORDERED on March 28, 2019.

                                          s/ Theresa L. Springmann
                                          CHIEF JUDGE THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT